UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MILTON, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION CTF- SOLEDAD, et al.,<br><br>        Defendants. | Case No. 23-cv-00582-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: ECF No. 24 |

Before the Court is Defendants' motion to dismiss. ECF No. 24.[1] The Court will grant the motion in part and deny it in part.

I.  **BACKGROUND**

This action stems from an alleged incident that occurred on July 20, 2020 at Correctional

---

[1] Defendants include the California Department of Corrections and Rehabilitation ("CDCR"); Warden Craig Alan Koenig; Correctional Officer Blake R. Barron; Correctional Officer Jesus Pedro Bojorquez; Officer Cesar S. Bravo; Commanding Officer Zachary Scott Brown; Correctional Officer Richard Cavagnolo; Correctional Officer Brandon Nelson Cope; Sergeant Jeffrey Dane DeAnzo; Correctional Captain Enrique Galvan; Correctional Officer V. Garcia; Correctional Officer M. Hernandez; Correctional Lieutenant J. Hunter; Correctional Officer Javiar G. Lopez; Correctional Lieutenant Rodolfo S. Luna; Chief Derrick Thomas Marion; Commanding Officer Yonatan U. Cerna Martinez; Correctional Sergeant Patrick A. McDonald; Commanding Officer Nathan S. McDowell; Correctional Officer Christian Eugene Mell; Assistant Warden Keith E. Mensing; Correctional Captain Donald G. Metcalfe; Correctional Officer Sergio Mora; Correctional Officer Jason C. Musselman; Correctional Officer Hector Javier Orozco; Correctional Sergeant Joshua Kurt Peffley; Correctional Officer Isidro Pantoja Perez; Correctional Sergeant Cory D. Perryman; Correctional Sergeant Justin D. Pierce; Correctional Officer Jeffrey John Reed; Correctional Officer Robert O. Salas; Correctional Officer Leighton St. Edison Scott; Commanding Officer Alex B. Serrato; Correctional Officer Jesse Daniel Sesma; Correctional Officer Steven T. Slimp; Correctional Officer D. Thompson; Correctional Sergeant Humberto Vera; Correctional Officer Carlos Vergara; Correctional Officer Russell Villalba; Correctional Sergeant Arturo Villalobos; and an unknown number of other guards (Does 1-30). ECF No. 1 at 17–33.

Training Facility ("CTF") Soledad. Because the facts are well-known to the parties and the Court has summarized Plaintiffs' allegations in detail in its prior motion to dismiss order, *Adams v. California Dep't of Corr. & Rehab.* ("*Adams*"), No. 21-cv-08545-JST, ECF No. 33, the Court will not elaborate them here.

To summarize, a group comprising 52 presently or formerly incarcerated persons filed a complaint on November 3, 2021 on behalf of themselves and a class seeking redress for alleged injuries they suffered as a result of a July 20, 2020 incident at CTF Soledad. *Adams*, ECF No. 1. Of those fifty-two Plaintiffs, forty-six Plaintiffs ("Incident Plaintiffs"), all of whom are Black, were roughly awakened in the middle of the night by a group of about three dozen officers, removed from their beds, and transported to a dining hall for holding and interrogation. *See generally id*. ¶¶ 125–538. Throughout the incident—which lasted at least 5 hours—the officers expressed indifference to Incident Plaintiffs' COVID-19 safety concerns, and those Incident Plaintiffs were generally not permitted to retrieve masks, clothes, or shoes to wear. *Id*. The remaining six Plaintiffs ("COVID-19 Plaintiffs") were not targeted directly in the July 2020 incident, but allegedly contracted COVID-19 as a result of it. *Id*.

To address concerns regarding the scope and manageability of Plaintiffs' initial complaint, the Court exercised its discretion to sever and dismiss without prejudice the claims of the six COVID-19 Plaintiffs who were not present for the July 2020 incident. *Adams*, ECF No. 33 at 10. The *Adams* action proceeded only with the claims of the Incident Plaintiffs.

Plaintiffs now bring this complaint on behalf of the six COVID-19 Plaintiffs who were not present for the July 2020 incident but allege to have contracted COVID-19 as a result of it, including: William Pardue (on behalf of himself and the estate of his son Raemon Pardue), Robert Clark, Adam Sanford, Saul Pelayo, William Milton, and Vickter Estrada. ECF No. 1 ¶¶ 18–24.

There were no COVID-19 infections at CTF Soledad prior to the July 2020 incident, and the first reported cases of COVID-19 at the facility occurred among individuals housed near the interrogation site, at least one of whom was present for the incident. *Id*. ¶¶ 309–15, 648. Within approximately ten days of the July 2020 incident, Raemon Pardue contracted COVID-19. *Id*. ¶ 407. D-Wing, where Raemon resided, went into quarantine on August 1, 2020. *Id*. ¶ 454.

Estrada, Milton, Pelayo, Sanford, and Clark each contracted the virus between August and December 2020. *Id*. ¶¶ 400, 404, 421, 426, 433.

Plaintiffs plead thirteen causes of action, which include: violation of the Biological Weapons Anti-Terrorism Act, 18 U.S.C. § 175; violation of the Hertzberg-Alarcon California Prevention of Terrorism Act, Cal. Penal Code §§ 11415, *et seq*.; civil RICO, 18 U.S.C. § 1961; conspiracy to commit civil RICO; violation of the Eighth Amendment by infliction of disease, 42 U.S.C. § 1983; civil rights terrorism, 18 U.S.C § 175 and 42 U.S.C. § 1983; conspiracy to commit terrorism by inflicting disease, 18 U.S.C § 175 and 42 U.S.C. § 1985; racial discrimination in the commission of federally-sponsored terrorism, 42 U.S.C. § 2000(d); violation of the Ralph Act; violation of the Bane Act; state law battery; state law negligence; and state law negligent supervision.[2]

## II.   JURISDICTION

The Court has subject matter jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiffs' state law causes of action under 28 U.S.C. § 1367.

## III.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Dismissal under [Federal Rule of Civil Procedure] 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Facts pleaded by a plaintiff "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

---

[2] All claims are set forth against all Defendants except CDCR with two exceptions: first, the Section 2000(d) claim is only set forth against Defendant CDCR and second, the negligent supervision claim is only set forth against Defendants 2, 6, 9, 10, 13-19, 21, 22, 26, 28, 29, 30, 33, 37, and 40. *See* ECF No. 1 at 145, 155; *see also id.* at 15–24 (listing defendants by number).

*Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. As the Ninth Circuit explained in *Starr v. Baca*:

> If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible. The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable.

652 F.3d 1202, 1216 (9th Cir. 2011). In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## IV.   DISCUSSION

### A.   Request for Judicial Notice

#### 1.   Defendants' Request for Judicial Notice

The Court begins by addressing Defendants' unopposed request for judicial notice. ECF No. 24-1. "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." If a fact is not subject to reasonable dispute, the Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

Defendants request judicial notice of (1) CDCR COVID-19 trend data (both overall, and "for Correctional Training Facility, CSP-Los Angeles, Pelican Bay State Prison and R. J. Donovan Correctional Facility"), all available on the agency's website; and (2) the Centers for Disease Control and Prevention's ("CDC") Isolation and Precautions for People with COVID-19

4

1    recommendations, as of May 11, 2023, available on the agency's website.  ECF No. 24-1 at 2.

2    　　　　All of the materials proposed are government records taken from websites maintained by

3    government agencies and therefore properly subject to judicial notice.  *See DeHoog v. Anheuser-*

4    *Busch InBev SA/NV*, 899 F.3d 758, 763 n.5 (9th Cir. 2018) (taking judicial notice of "government

5    documents . . . and undisputed matters of public record"); *Rollins v. Dignity Health*, 338 F. Supp.

6    3d 1025, 1032 (N.D. Cal. 2018) (noting that, "because of their perceived reliability, courts have

7    often admitted records taken from websites maintained by government agencies").  The Court

8    therefore takes judicial notice of the aforementioned documents.

### 2.    **Sua Sponte Judicial Notice**

10    　　　　The Court also chooses sua sponte to take judicial notice of two government website

11    publications concerning the spread and transmission of COVID-19.  *See* Fed. R. Evid. 201(c)(1)

12    (stating that the court "may take judicial notice on its own").  Since the onset of the COVID-19

13    pandemic in March 2020, courts across the country have "routinely taken judicial notice of the

14    likely risks and severity of COVID-19 and the potential efficacy of mitigation measures" as

15    reported by public health authorities.  *Joffe v. King & Spalding LLP*, No. 17-CV-3392, 2020 WL

16    3453452, at *7 (S.D.N.Y. June 24, 2020) (collecting cases); *see also Metroflex Oceanside LLC v.*

17    *Newsom*, 532 F. Supp. 3d 976, 980 (S.D. Cal. 2021) (taking judicial notice of "information about

18    the COVID-19 virus," and "government orders related to the COVID-19 pandemic"); *United*

19    *States v. Smith*, 538 F. Supp. 3d 990, 995 (E.D. Cal. 2021) (taking judicial notice of the CDC's

20    statements that risk of severe COVID-19 illness increased sharply with elevated body mass index);

21    *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of

22    information concerning the transmission of Lyme disease from the CDC).

23    　　　　First, the Court takes judicial notice of the following statement on the CDC's website:

24    "COVID-19 spreads when an infected person breathes out droplets and very small particles that

25    contain the virus.  Other people can breathe in these droplets and particles, or these droplets and

26    particles can land on their eyes, nose, or mouth . . . .  Anyone infected with COVID-19 can spread

it, even if they do NOT have symptoms."[3]  The Court also takes judicial notice of the CDC's statement that an individual "can still develop COVID-19 up to 10 days after" exposure.[4]

Because government publications are "matters of public record" and can be easily verified, they are proper subjects of judicial notice.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *see Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 978 n.2 (9th Cir. 2007) (explaining that a court may take judicial notice of a government publication); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (taking judicial notice of public records that "can be accessed at Santa Monica's official website").

**B.     Exhaustion**

Defendants move to dismiss the claims brought by Plaintiffs Estrada, Pelayo, and Sanford "because they did not exhaust available administrative remedies."  ECF No. 24 at 24.  The crux of Plaintiffs' response is that the Court need not "adjudicate administrative exhaustion claims during the pleading stage."  ECF No. 29 at 48.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 211 (2007) ("[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Section 1997e(a) requires "proper exhaustion" of available administrative remedies.  Proper exhaustion demands that a prisoner pursue every available step of the prison appeal process and adhere to "deadlines and other critical procedural rules" of that process.  *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006).  California regulations require a prisoner "to lodge his administrative complaint on CDC[R] Form 602 and 'to describe the problem and action requested.'"  *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (quoting former Cal. Code Regs.

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/your-health/about-covid-19.html, last visited April 23, 2024.
[4] https://archive.cdc.gov/#/results?q=https://www.cdc.gov/coronavirus/2019-ncov/your-health/if-you-were-exposed.html&start=0&rows=10&url=https://www.cdc.gov/coronavirus/2019-ncov/your-health/if-you-were-exposed.html, last visited April 23, 2024.

1    tit. 15 § 3084.2(a)).

2          As a threshold matter, Plaintiffs fall short of providing an adequate explanation why the
3    Court should not resolve exhaustion claims at this stage in proceedings. The Ninth Circuit has
4    made clear that "where a failure to exhaust is clear from the face of the complaint, a defendant
5    may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim." *Albino v.*
6    *Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). True, as Plaintiffs point out, it is often a "'rare event'
7    that a failure to exhaust is clear on the face of the complaint." ECF No. 29 at 48 (quoting *Albino*,
8    747 F.3d at 1169). Such cases, however, are only "rare because a plaintiff is not required to say
9    anything about exhaustion in his complaint." *Albino*, 747 F.3d at 1169. Here, the accompanying
10   exhibits to Plaintiffs' complaint reveal deficiencies with regard to Estrada, Pelayo, and Sanford's
11   fulfillment of their exhaustion requirements.

12         Estrada's Form 602 states that he tested positive for COVID-19 in March 2021[5] and that he
13   "was exposed to COVID through the bread racks that [were] used to carry the food trays for
14   breakfast and dinner." ECF No. 1 at 295, 297. Nowhere in Estrada's Form 602 does he reference
15   the July 2020 incident, or state that he caught COVID-19 as a result of it. Notably, Plaintiff
16   Milton mentioned the incident in his Form 602, stating that the "[July 2020] raid in which [B]lack
17   prisoners were targeted for assault and infection" "increase[d] the susceptibility of [the prisoners']
18   COVID-19 exposure." ECF No. 1 at 315. In light of Estrada's failure to reference the July 2020
19   incident, the Court finds that Estrada did not "describe the problem" in his Form 602 with
20   sufficient specificity to satisfy his exhaustion requirement. *Morton*, 599 F.3d at 946.

21         Pelayo and Sanford's Forms fall prey to the same deficiencies as Estrada's Form.[6] They
22   too fail to mention the July 2020 incident. Pelayo attributes his infection to two prison guards'
23   choice to house him with cellmates who were "sick with COVID." ECF No. 1 at 328. Sanford
24   details how he was denied medical care even though he reported that he was suffering from

---

[5] Estrada alleges that he "became ill on [December] 24, 2020," but the COVID-19 test that he took at the time "ended up being a false negative result." ECF No. 1 at 297.
[6] Although Defendants claim that Pelayo also "failed to comply with the Government Claims Act," the Court declines to reach this argument because it finds that Pelayo has failed to satisfy administrative exhaustion requirements.

7

COVID-19 symptoms. ECF No. 1 at 334. Akin to Estrada, the Court finds that Pelayo and Sanford did not "describe the problem" with sufficient specificity to satisfy their respective exhaustion requirements. *Morton*, 599 F.3d at 946.

Accordingly, the Court dismisses the claims of Plaintiffs Estrada, Pelayo, and Sanford for failure to exhaust their claims pursuant to the PLRA. Because exhaustion deficiencies cannot be cured by amendment, the claims of these three Plaintiffs are dismissed with prejudice. *See Plumeau v. Sch. Dist. #40 Cty. of Yamhill*, 130 F.3d 432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where further amendment would be futile).

### C. COVID-19 Related Claims

Defendants move to dismiss all thirteen of Plaintiffs' claims on the ground that "Plaintiffs have not plausibly alleged that Operation Akili, and not some other source, caused their COVID infection." ECF No. 24 at 14. Defendants contend that Plaintiffs' complaint is devoid of "the necessary detail and causal link" required to survive a motion to dismiss. *Id.* at 15. In their opposition, Plaintiffs argue that even if they contracted COVID "via a sequential series of events," the July 2020 incident was the "proximate cause" of their infections. ECF No. 29 at 18, 23.

At the outset, a fundamental premise bears emphasis: each COVID-19 Plaintiff needs to prove that Defendants' actions on July 20, 2020 caused their COVID-19 infection. With this principle in mind, the Court will address each remaining Plaintiff.

Plaintiff Milton allegedly contracted COVID-19 in late November or early December 2020. ECF No. 1 ¶¶ 400–02. While the complaint asserts that Milton is "concerned that his positive test may have been an intentional false positive, designed to justify a decision to move him to quarantine and thus infect him with the virus," it does not plausibly explain how the July 2020 incident caused Milton to contract COVID-19 some four-months later. *Id.* ¶ 400.

Plaintiff Robert Clark allegedly contracted COVID-19 on August 7, 2020—17 days after the Operation. *Id.* ¶ 433. Clark asserts that he caught COVID-19 one week after Lawrence Brown, who resided "just two cells across and over" from him and tested positive on July 29, 2020. *Id.* ¶¶ 309, 431. Unlike Clark, who remained in his cell during the Operation, Brown was transported from his cell to the dining hall for holding and interrogation on July 20, 2020. *Id.* ¶

8

1  308. Although the complaint alleges that Clark contracted COVID-19 17 days after Operation
2  Akili, it does not provide sufficient facts demonstrating that Clark's infection was proximately
3  caused by the July 2020 incident as opposed to many other potential sources of that disease.
4        Unlike Plaintiffs Milton and Clark, Plaintiff William Pardue (in his individual capacity and
5  on behalf of the estate of his son Raemon Pardue) plausibly alleges that his son Raemon
6  contracted COVID-19 as a result of Operation Akili.  The complaint alleges that Raemon
7  contracted COVID-19 within ten days of July 20, 2020, and that he may have contracted the virus
8  from his cellmate, Ronald Patterson, who was taken from his cell and interrogated during the
9  Operation.  *Id.* ¶¶ 407, 411–12.  Defendants respond that Plaintiffs' "generalized theory" that
10 Patterson contracted COVID-19 from a "single infected guard" and then infected Raemon is too
11 "conclusory" to "establish intentionality or causation."  ECF No. 24 at 15; *see* ECF No. 33 at 11.
12 As noted above, *see supra* Section IV.A.2, CDC guidance states that an individual "can still
13 develop COVID-19 up to 10 days after" exposure.  To be sure, Raemon may have contracted
14 COVID-19 from some other source, but "[t]he plausibility standard is not akin to a 'probability
15 requirement[.]'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  It simply "asks for more than a
16 sheer possibility that a defendant has acted unlawfully."  *Id*.  At bottom, Raemon was housed in
17 D-Wing, and contracted COVID-19 within 10 days of the Operation.  The Court finds this
18 sufficient.
19       The Court dismisses all claims of Plaintiffs Milton and Clark.  Although the Court finds it
20 unlikely that Milton and Clark could allege additional facts to demonstrate causation, it grants
21 leave to amend out of abundance of caution.[7]  *See Rivas v. Kijakazi*, No. C 23-03324 WHA, 2023
22 WL 8006846, at *2 (N.D. Cal. Nov. 17, 2023) (granting leave to amend where "defects [in
23 complaint] could theoretically be cured").  Accordingly, only the claims of William Pardue, on

---

[7] Although the claims of Plaintiffs Sanford, Pelayo, and Estrada have already been dismissed due to failure to exhaust, the Court briefly notes that even if they had properly exhausted their claims, they have also failed to allege adequate causation.  Sanford and Pelayo allegedly tested positive for COVID-19 in November 2020, while Estrada allegedly tested positive for COVID-19 in December 2020.  ECF No. 1 ¶¶ 404, 421, 426.  None of these three Plaintiffs offer facts that demonstrate how their exposure to COVID-19 approximately four to five months after the alleged July 2020 incident resulted from that incident as opposed to many other potential sources of that disease.

9

behalf of Raemon Pardue, survive.

### D. Federal and State Criminal Statutes

Plaintiffs bring their first, sixth, and seventh causes of action under 18 U.S.C. § 175, and their second cause of action under the Hertzberg-Alarcon California Prevention of Terrorism Act, California Penal Code §§ 11415, *et seq*. Defendants contend that these claims must be dismissed because they are "pursuant to criminal statutes that provide no private cause of action." ECF No. 24 at 17. As set forth below, the Court agrees with Defendants.

First, Section 175 of Title 18 of the United States Code details "[p]rohibitions with respect to biological weapons." 18 U.S.C. § 175. "The Ninth Circuit has repeatedly held that federal criminal statutes provide no basis for civil liability." *Carrow v. Roberts*, No. ED-CV-21-1525-JGB(SHKx), 2022 WL 2102934, at *5 (C.D. Cal. Jan. 3, 2022) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)). "Title 18 of the United States Code is a federal criminal statute which does not create civil liability or a private right of action." *Id.* (quoting *ManorCare of Easton PA LLC v. Nagy*, 2017 WL 4347623, at *4 (E.D. Pa. Sept. 29, 2017)). Although Plaintiffs argue that a private right of action exists because the "underlying legislative purposes" of Section 175 include "employ[ing] every conceivable measure to deter" biological terrorism, the Court is not persuaded. ECF No. 29 at 30. Indeed, several courts have concluded that Section 175 does not confer a private right of action, and the Court agrees with their analysis. *See Carrow*, 2022 WL 2102934 at *5; *Caldwell v. Butler*, No. 2:20-CV-673-MHT, 2020 WL 13742925, at *2 (M.D. Ala. Sept. 9, 2020) (quoting *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973)) (holding "[t]o the extent Plaintiff requests the imposition of criminal charges against the defendants for the alleged violation of 18 U.S.C. § 175 . . . a 'private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another.'").

Second, Defendants contend that the Hertzberg-Alarcon California Prevention of Terrorism Act (the "Act") also does not provide a private cause of action. The Act provides for criminal penalties for individuals who develop, produce, possess, or retain "any weapon of mass destruction." Cal. Penal Code § 11418(a). California law is clear that legislative intent determines whether a private cause of action exists—if "the Legislature expressed no intent on the matter

10

1    either way, directly or impliedly, there is no private right of action." *Animal Legal Def. Fund v.*

2    *Mendes*, 160 Cal. App. 4th 136, 142 (2008) (citing *Moradi–Shalal v. Fireman's Fund Ins.*

3    *Companies*, 46 Cal.3d 287, 305 (1988)). Nothing in the text of the Act indicates that the

4    California Legislature intended to create a private right of action. Further, at least one other

5    district court has found that the "[n]o private right of action is created by the Act." *Smith v. Metro.*

6    *State Hosp.*, No. 220CV05845DSFAFM, 2020 WL 7089961, at *2 (C.D. Cal. Aug. 5, 2020).

7        Because amendment of these claims would be futile, the Court dismisses Plaintiffs' claims

8    under 18 U.S.C. § 175 and California Penal Code §§ 11415, *et seq.* with prejudice. *See Plumeau*,

9    130 F.3d at 439 (denial of leave to amend appropriate where further amendment would be futile).

10       **E.**    **RICO**

11       Defendants move to dismiss Plaintiffs' third and fourth causes of action—violation of

12   RICO and conspiracy to commit RICO, respectively—on the ground that Plaintiffs fail to state a

13   cognizable RICO claim. ECF No. 24 at 21. To establish a RICO claim, a plaintiff must allege:

14   "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as

15   'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Grimmett v. Brown*, 75

16   F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1962(c), 1964(c)).

17       The Court begins with the first element in dispute: whether Plaintiffs have established a

18   "pattern." Defendants argue that Plaintiffs have failed to show a pattern because, in order "[t]o

19   satisfy the 'pattern' requirement, there must be at least two acts of racketeering activity within a

20   ten-year period." ECF No. 24 at 21 (citing 18 U.S.C. § 1961(5)). Plaintiffs respond that

21   Defendants "used a system of having one or more infected CTF guards perform the cell extraction

22   process," and therefore "engaged in numerous acts of biological warfare" sufficient to constitute a

23   pattern. ECF No. 1 ¶¶ 673–74. The Supreme Court has made clear that "[i]t is this factor of

24   *continuity plus relationship* which combines to produce a pattern" for RICO purposes. *H.J. Inc. v.*

25   *Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). The crux of Plaintiffs' complaint, however, is that

26   Operation Akili—a one-time incident that occurred on July 20, 2020—resulted in a viral spread of

27   COVID-19 throughout CTF Soledad. A pattern "requires the showing of a relationship" between

28   predicate events and "the threat of continuing activity." *Id.* Because Plaintiffs have shown

11

neither, they have not sufficiently established a "pattern" for RICO purposes.

The second element at issue is whether Plaintiffs have established injury to their business or property. Defendants contend that Plaintiffs have not alleged a RICO injury because "they have not alleged any concrete financial or business loses." ECF No. 24 at 21. While Plaintiffs aver that they are "in a working business (employment) relationship with CTF, CDCR, and effectively, the prison officials themselves," ECF No. 1 ¶ 675, they have not identified any concrete financial or business injury. *See Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) ("Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO.").

Because the Court finds that amendment of Plaintiff's RICO claims would be futile, the Court dismisses them with prejudice. *See Plumeau*, 130 F.3d 432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where further amendment would be futile).

### F.     Section 1985

Plaintiffs' seventh cause of action, brought pursuant to 18 U.S.C. § 175 and 42 U.S.C. § 1985, has already been dismissed because Section 175 does not create a private right of action. *See supra* Section IV.D. Nonetheless, the Court briefly notes that Plaintiffs have also failed to allege the elements of a Section 1985 claim.

To bring a cause of action successfully under Section 1985, a plaintiff must allege four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 828–29 (1983).

The complaint contains only conclusory allegations that Defendants "engaged in a conspiracy" when they conducted Operation Akili. ECF No. 1 ¶ 695. Accordingly, Plaintiffs have failed to allege that Defendants engaged in a conspiracy to infect them. *See Natomas Gardens Inv. Grp., LLC v. Sinadinos*, 710 F. Supp. 2d 1008, 1021 (E.D. Cal. 2010) ("Plaintiffs

12

1  allege in paragraph 208 of their SAC that the Johls 'were associated with the enterprises' and

2  'were aware of the alleged RICO conspiracy and intended to facilitate or otherwise participate in

3  it.' . . . These conclusory allegations are not supported by any additional, factual allegations in the

4  complaint.").

### G. Ralph Act

Plaintiffs' ninth cause of action is for a violation of the California Ralph Act. The Ralph Act guarantees Californians "the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any [listed characteristic.]" Cal. Civ. Code § 51.7(b)(1). To prevail on a Ralph Act claim, a plaintiff must establish that: (1) Defendants committed or threatened violent acts against Plaintiffs; (2) Defendants were motivated by their perception of Plaintiffs' political affiliation, or on account of any listed characteristic, including race; (3) Plaintiffs were harmed; and (4) Defendants' conduct was a substantial factor in causing Plaintiffs' harm. *See Knapps v. City of Oakland*, 647 F.Supp.2d 1129, 1167 (N.D. Cal. 2009) (citing *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 880–81 (2007)).

The Ralph Act requires "violence, or intimidation by threat of violence." Cal. Civ. Code § 51.7(b)(1). Defendants contend that Plaintiffs cannot "allege that they were subject to threats of violence or had violence committed against them" because "none of the Plaintiffs were subject to Operation Akili." ECF No. 24 at 23. The Court agrees. Plaintiffs concede that they were "not personally subject to violence." ECF No. 29 at 43. A Ralph Act claim is not viable where Plaintiffs themselves are not subject to violence or threats of violence.[8] *See Campbell v. Feld Ent., Inc.*, 75 F. Supp. 3d 1193 (N.D. Cal. 2014) (stating that "violence . . . demands more than mere application of physical force.") (internal quotations omitted).

While the Court is doubtful that this deficiency could be cured by the allegation of additional facts, it grants leave to amend out of abundance of caution. *See Rivas*, 2023 WL

---

[8] Plaintiffs argue that they were still subject to violence because the "guards were engaged in a conspiracy to infect them." ECF No. 29 at 43. The Court finds this argument unavailing. While claims under the Ralph Act may include "intimidation by threat of violence," nothing in the Act itself suggests that violence extends to alleged conspiracies. Cal. Civ. Code § 51.7(b)(1).

13

8006846, at *2 (granting leave to amend where "defects [in complaint] could theoretically be cured").

### H. Bane Act

Plaintiffs' tenth cause of action is for a violation of the California Bane Act. The Bane Act provides for damages and injunctive relief for an individual "whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with." Cal. Civ. Code § 52.1. The intimidation must be accomplished through "threats, intimidation, or coercion." *Id.*

Defendants argue that Plaintiffs' Bane Act claim must be dismissed because they fail to "allege that they were threatened, intimated, or coerced by any Defendant." ECF No. 24 at 23. In their opposition, Plaintiffs contend that Officers refused to allow inmates to have COVID-19 protections, such as masks, and "issu[ed] various threats and intimidating statements." ECF No. 29 at 45. While Incident Plaintiffs may have been exposed to such threats, the complaint is devoid of allegations demonstrating that the COVID-19 Plaintiffs who were not present for the July 2020 incident were threatened, intimidated, or coerced in any way. Without any "alleged contact between any Defendant and any Plaintiff," Plaintiffs' Bane Act claim cannot survive. ECF No. 24 at 23.

Akin to Plaintiffs' Ralph Act Claim, the Court finds it unlikely that this deficiency could be cured by the allegation of additional facts. Nonetheless, it grants leave to amend out of abundance of caution. *See Rivas*, 2023 WL 8006846, at *2 (granting leave to amend where "defects [in complaint] could theoretically be cured").

### I. State Law Battery, Negligence, and Negligent Supervision

Defendants move to dismiss Plaintiffs' state law battery, negligence, and negligent supervision claims. The Court will grant Defendants' motion in full as to their battery and negligent supervision claims, and it will partially grant Defendants' motion as to their negligence claim.

#### 1. Battery

First, Defendants move to dismiss Plaintiffs' battery claim on the ground that "Plaintiffs do

14

not allege that any Defendant touched them." ECF No. 24 at 24.  Plaintiffs' complaint alleges that Defendants "forcibly extract[ed] approximately 100 Black inmates from their cells, in the middle of the night while they were sleeping, in order to herd them into CTF's central dining hall #1 with approximately 100 other African Americans in close proximity." ECF No. 1 ¶ 736.  However, a closer examination of the complaint reveals that while the Incident Plaintiffs in the *Adams* action were removed from their cells during the Operation, none of the Plaintiffs in this action were involved directly in the events on the night of July 20, 2020.  Accordingly, Plaintiffs' battery claim is dismissed with leave to amend.

### 2. Negligence

Defendants next move to dismiss Plaintiffs' negligence claim.  Plaintiffs allege that Defendants were negligent in failing to: "only use as much force as necessary to accomplish any particular prison objective," "employ careful safety protection and social distancing protocols to avoid the spread of disease," "avoid unprofessional behavior," and "minimize the spread of infectious diseases." ECF No. 1 ¶ 744.  In moving to dismiss this claim, Defendants aver that "Plaintiffs do not allege force was used against them," and that they "have already established that Plaintiffs have not plausibly alleged causation." ECF No. 24 at 28.

The Court agrees that Plaintiffs' claim for negligence must be dismissed with leave to amend to the extent it is premised upon Defendants' alleged use of force, as Plaintiffs have not alleged that force was used against them.  However, to the extent that Plaintiffs' negligence claim is based upon a failure to employ safety protection, social distancing protocols, and to minimize the spread of infectious diseases, the Court finds that this claim may survive as to Plaintiff William Pardue, on behalf of Raemon Pardue, because his claims were not dismissed for lack of causation or failure to exhaust administrative remedies.

### 3. Negligent Supervision

Defendants argue that Plaintiffs' negligent supervision claim should be dismissed because "the claims are targeted at the supervisor Defendants' alleged negligence during the Operation," and "none of the Plaintiffs were subjected to the Operation." ECF No. 24 at 24.  Plaintiffs neither respond to this point nor make any argument in support of their negligent supervision claim in

their opposition brief.

"To establish negligent supervision, a plaintiff must show that the person in a supervisorial position over the actor had prior knowledge of the actor's propensity to do the bad act." *Z.V. v. Cnty. of Riverside*, 238 Cal. App. 4th 889, 902 (2015). Plaintiffs' threadbare allegations that "Defendant supervisors were unfit, incompetent, and violated the standard of care" fail to state a plausible claim to relief. ECF No. 1 ¶ 75. Accordingly, this claim is dismissed with leave to amend.

### J.     William Pardue

Plaintiff William Pardue brings claims both on behalf of himself and the estate of Raemon Pardue. Defendants argue that William Pardue "does not allege any specific damages or claims in his individual capacity," and accordingly, his individual claims "should be dismissed from this action." ECF No. 24 at 27. Although Plaintiffs respond that William brings "an individual (wrongful death) claim" as to each cause of action alleged in the complaint, ECF No. 29 at 52, the complaint neither contains a wrongful death allegation, nor any other claims brought by William in his individual capacity. *See Woods v. Aug.*, No. 3:15-CV-05666-WHO, 2019 WL 8105898, at *1 (N.D. Cal. Mar. 14, 2019) (finding that claims brought by Woods as an individual were sufficiently plead where "[t]he damages section include[d] injuries only Ms. Woods allegedly suffered," as well as "wrongful death damages."). Accordingly, William Pardue's individual capacity claims are dismissed with leave to amend.

### K.     Lawrence Brown

Throughout their opposition, Plaintiffs state that they seek to substitute Lawrence Brown as a Plaintiff in this case. ECF No. 29 at 22, 46, 52. The Court will not permit such a substitution because Brown is an Incident Plaintiff in the concurrent *Adams* litigation. *See Adams*, ECF No. 34. As Defendants correctly point out, "Plaintiffs generally have 'no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.'" *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977)), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008).

# CONCLUSION

In sum, the Court grants, in part, Defendants' motion to dismiss. All claims brought by Vickter Estrada, Saul Pelayo, and Adam Sanford are dismissed with prejudice for failure to exhaust administrative remedies. All claims brought by Robert Clark and William Milton are dismissed with leave to amend. The sole remaining Plaintiff is William Pardue on behalf of the estate of Raemon Pardue.[9]

The following claims are dismissed with prejudice: violation of the Biological Weapons Anti-Terrorism Act, 18 U.S.C. § 175; violation of the California Prevention of Terrorism Act, Cal. Penal Code §§ 11415, *et seq*.; civil RICO, 18 U.S.C. § 1961; conspiracy to commit civil RICO; civil rights terrorism, 18 U.S.C § 175 and 42 U.S.C. § 1983; conspiracy to commit terrorism by inflicting disease, 18 U.S.C § 175 and 42 U.S.C. § 1985. Plaintiffs' claims for violation of the Ralph Act, violation of the Bane Act, state law battery, state law negligent supervision, and state law negligence (to the extent the claim is premised upon Defendants' alleged use of force) are dismissed with leave to amend.

Plaintiffs' surviving claims are as follows: violation of the Eighth Amendment by infliction of disease, 42 U.S.C. § 1983; racial discrimination of federally-sponsored terrorism, 42 U.S.C. § 2000(d); and state law negligence (to the extent that Plaintiffs' negligence claim is based upon a failure to employ safety protection, social distancing protocols, and to minimize the spread of infectious diseases).

Plaintiffs may file an amended complaint within 28 days of this order solely to address the deficiencies identified in the order. Failure to timely file an amended complaint will result in dismissal of the relevant claims with prejudice.

**IT IS SO ORDERED.**

Dated: April 23, 2024

JON S. TIGAR
United States District Judge

---

[9] The individual claims of William Pardue are also dismissed with leave to amend. *See supra* Section IV.J.