UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MILTON, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION CTF- SOLEDAD, et al.,<br><br>    Defendants. | Case No. 23-cv-00582-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 45 |

Before the Court is Defendants' motion to dismiss. ECF No. 45. The Court will grant the motion.

## I. BACKGROUND

This action stems from an alleged incident—"Operation Akili"—that occurred on July 20, 2020 at Correctional Training Facility ("CTF") Soledad. Because the facts are well-known to the parties and the Court has summarized the Plaintiffs' allegations in detail in its prior motion to dismiss orders, *Adams v. California Dep't of Corr. & Rehab.* ("*Adams*"), No. 21-cv-08545-JST, ECF No. 33, and *Milton*, ECF No. 35, the Court will not elaborate them here.

To summarize, a group comprising 52 presently or formerly incarcerated persons filed a complaint on November 3, 2021 on behalf of themselves and a class seeking redress for alleged injuries they suffered as a result of Operation Akili. *Adams*, ECF No. 1. Of those fifty-two Plaintiffs, forty-six Plaintiffs ("Incident Plaintiffs"), all of whom are Black, were roughly awakened in the middle of the night by a group of about three dozen officers, removed from their beds, and transported to a dining hall for holding and interrogation. *See generally id.* ¶¶ 125–538. Throughout the incident—which lasted at least 5 hours—the officers expressed indifference to

Incident Plaintiffs' COVID-19 safety concerns, and those Incident Plaintiffs were generally not permitted to retrieve masks, clothes, or shoes to wear. *Id*.

To address concerns regarding the scope and manageability of Plaintiffs' initial complaint, the Court exercised its discretion to sever and dismiss without prejudice the claims of the six COVID-19 Plaintiffs who were not present for the July 2020 incident. *Adams*, ECF No. 33 at 10. The *Adams* action proceeded only with the claims of the Incident Plaintiffs.

Plaintiffs then brought this action on behalf of the six COVID-19 Plaintiffs who were not present for the July 2020 incident but allege to have contracted COVID-19 as a result of it, including: William Pardue (on behalf of himself and the estate of his son Raemon Pardue), Robert Clark, Adam Sanford, Saul Pelayo, William Milton, and Vickter Estrada. ECF No. 1 ¶¶ 18–24.

There were no COVID-19 infections at CTF Soledad prior to the July 2020 incident, and the first reported cases of COVID-19 at the facility occurred among individuals housed near the interrogation site, at least one of whom was present for the incident. *Id.* ¶¶ 309–15, 648. Within approximately ten days of the July 2020 incident, Raemon Pardue contracted COVID-19. *Id.* ¶ 407. D-Wing, where Raemon resided, went into quarantine on August 1, 2020. *Id.* ¶ 454. Estrada, Milton, Pelayo, Sanford, and Clark each contracted the virus between August and December 2020. *Id*. ¶¶ 400, 404, 421, 426, 433.

In its prior order, the Court granted Defendants' motion to dismiss in part and dismissed Estrada, Pelayo, and Sanford with prejudice for failure to exhaust administrative remedies. ECF No. 35 at 17. The Court also dismissed the following claims with prejudice: violation of the Biological Weapons Anti-Terrorism Act, 18 U.S.C. § 175; violation of the California Prevention of Terrorism Act, Cal. Penal Code §§ 11415, *et seq*.; civil RICO, 18 U.S.C. § 1961; conspiracy to commit civil RICO; civil rights terrorism, 18 U.S.C § 175 and 42 U.S.C. § 1983; conspiracy to commit terrorism by inflicting disease, 18 U.S.C § 175 and 42 U.S.C. § 1985. *See id.*

Plaintiffs Milton, Pardue, and Clark now assert six causes of action through their first amended complaint: violation of the Eighth Amendment by infliction of disease, 42 U.S.C. § 1983; racial discrimination in the commission of federally-sponsored terrorism, 42 U.S.C. § 2000(d); violation of the Ralph Act; state law battery; state law negligence; and state law

negligent supervision.[1]

## II. JURISDICTION

The Court has subject matter jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiffs' state law causes of action under 28 U.S.C. § 1367.

## III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Dismissal under [Federal Rule of Civil Procedure] 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Facts pleaded by a plaintiff "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## IV. DISCUSSION

### A. COVID-19 Related Claims

Defendants move to dismiss all of Milton's and Clark's claims on the ground that they

---

[1] All claims are set forth against all Defendants except CDCR with two exceptions: first, the Section 2000(d) claim is only set forth against Defendant CDCR and second, the negligent supervision claim is only set forth against Defendants 2, 6, 9, 10, 13-19, 21, 22, 26, 28, 29, 30, 33, 37, and 40. *See* ECF No. 40 at 144, 161; *see also id.* at 20–39 (listing defendants by number).

have not shown that Defendants caused them to contract COVID-19 via Operation Akili. ECF No. 45 at 9.

As the Court stated in its previous order, "[a]t the outset, a fundamental premise bears emphasis: each COVID-19 Plaintiff needs to prove that Defendants' actions on July 20, 2020 caused their COVID-19 infection. With this principle in mind, the Court will address each remaining Plaintiff." ECF No. 35 at 8.

Plaintiffs have not amended the facts pleaded regarding their contraction of COVID-19 or how it was related to the July 2020 incident. *See* ECF No. 46 at 17 ("[I]t is true that the amended complaint does not offer new facts about Milton's personal experience."). Instead, Plaintiffs have submitted a study about how a conference at the Boston Marriott Hotel became a superspreader event to show that it is possible for a single event to "infect people four months after the ground zero contraction." *See* ECF No. 46 at 17 (citing ECF No. 40, Ex. 15, (Lemieux, et al., *Phylogenetic Analysis of SARS-CoV-2 in Boston Highlights the Impact of Superspreading Events*, 371 Science 588 (2021))). Plaintiffs claim that the study concluded that the Boston conference, which took place on February 26–27, 2020, became a superspreader event resulting in an estimated 245,000 cases detected across 29 states, nine months later—and that all cases were genetically traceable to the specific strain that originated at that conference. *See* ECF No. 46 at 17–18. Plaintiffs argue that based on this study, "it seems a bit more than plausible that the same Covid-19 strain that infected the inmates in D-Wing in July 2020 could, indeed, reach Milton four months later, who, housed in X-Wing, was not 2,700 miles away, but 500 feet away." *Id.* at 17.

Plaintiffs misinterpret the Court's previous order. Even assuming that the Boston study stands for the conclusions that Plaintiffs attribute to it, those conclusions show only that it was possible that the strains of COVID-19 contracted by Milton and Clark were genetically traceable to the strains of COVID-19 allegedly introduced by Defendants on July 20, 2020. The Boston study does not show that Defendants were more likely the *proximate* cause of Milton and Clark's COVID-19 infection—given the amount of time that passed between Operation Akili and Milton's and Clark's contractions of disease and the many variables that factor into disease spread. As the Court previously explained, "[a]lthough the complaint alleges that Clark contracted COVID-19 17

4

days after Operation Akili, it does not provide sufficient facts demonstrating that Clark's infection was proximately caused by the July 2020 incident as opposed to many other potential sources of that disease." ECF No. 35 at 9. The same applies with even more force for Milton, who contracted COVID-19 four months after Operation Akili. Accordingly, the Court dismisses all claims of Milton and Clark without leave to amend for failure to plausibly plead causation.

## B. Ralph Act

As relevant here, the California Ralph Act requires "violence, or intimidation by threat of violence." Cal. Civ. Code § 51.7(b)(1). The Court previously found that a Ralph Act claim was not viable because Plaintiffs themselves were not subject to violence or threats of violence, as none of them were personally subject to Operation Akili. ECF No. 35 at 13 (citing *Campbell v. Feld Ent., Inc.*, 75 F. Supp. 3d 1193 (N.D. Cal. 2014) (stating that "violence . . . demands more than mere application of physical force") (internal quotations omitted).

Plaintiffs still do not allege that they were personally subject to violence or threats of violence during Operation Akili, but instead argue that they can assert their Ralph Act claim because they contracted COVID-19 due to force used on others. *See* ECF No. 40 ¶¶ 697–702.[2] Because Plaintiffs continue to ignore the legal requirement that a Ralph Act plaintiff be personally subjected to violence or threats of violence, the Court dismisses the Ralph Act claim without leave to amend.

## C. State Law Battery, Negligence, and Negligent Supervision

### 1. Battery

The Court previously dismissed Plaintiffs' battery claim because "none of the Plaintiffs in this action were involved directly in the events on the night of July 20, 2020," so Plaintiffs do not allege that any Defendant touched them—as required for a claim of battery. *See* ECF No. 35 at 14–15.

---

[2] Plaintiffs once again argue that Defendants can also be liable because Defendants engaged in a conspiracy to harm them. ECF No. 46 at 26–27. As the Court stated before, while claims under the Ralph Act may include "intimidation by threat of violence," nothing in the Act itself suggests that violence extends to alleged conspiracies. *See* ECF No. 35 at 13 n.8 (quoting Cal. Civ. Code § 51.7(b)(1)).

5

Plaintiffs still do not allege that Defendants exerted any force on them either directly or indirectly. Instead, they again assert their "derivative injuries" theory. They argue that because Defendants physically attacked Lawrence Brown and infected him with COVID-19, Brown's subsequent infection of Plaintiffs with COVID-19 justifies Defendants' liability for battery. *See* ECF No. 46 at 28–29. As this merely repeats the same arguments that the Court previously found to be insufficient, Plaintiffs' battery claim is dismissed without leave to amend.

### 2. Negligence

Because Plaintiffs have not alleged that force was used against them, the Court dismisses Plaintiffs' negligence claim without leave to amend to the extent it is premised upon Defendants' alleged use of force. To the extent that Milton's and Clark's negligence claim is based upon a failure to employ safety protection, social distancing protocols, and to minimize the spread of infectious diseases, the Court dismisses this claim without leave to amend for lack of causation as discussed above.

### 3. Negligent Supervision

"To establish negligent supervision, a plaintiff must show that the person in a supervisorial position over the actor had prior knowledge of the actor's propensity to do the bad act." *Z.V. v. Cnty. of Riverside*, 238 Cal. App. 4th 889, 902 (2015). The Court previously found that "Plaintiffs' threadbare allegations that 'Defendant supervisors were unfit, incompetent, and violated the standard of care' fail to state a plausible claim to relief." ECF No. 35 at 16 (quoting ECF No. 1 ¶ 75).

Plaintiffs in their amended complaint still do not allege that Defendants had any prior knowledge of any CDCR officer's "propensity to do the bad act[s]" alleged here. *See generally* ECF No. 40 ¶¶ 771–85; *see also* ECF No. 46 at 29–30. Accordingly, this claim is dismissed without leave to amend.

### D. California Government Claims Act

The California Government Claims Act, Cal. Gov. Code § 810 *et seq.*, "is a comprehensive statutory scheme that sets forth the liabilities and immunities of public entities and public employees for torts." *Cordova v. City of Los Angeles*, 61 Cal. 4th 1099, 1104–05 (2015). The Act

"requires that 'all claims for money or damages against local public entities' be presented to the responsible public entity before a lawsuit is filed." *City of Stockton v. Superior Court*, 42 Cal. 4th 730, 734 (2007) (quoting Cal. Gov. Code § 905).  A claim relating to a cause of action for death or injury to a person or to personal property must be presented to the public entity no later than six months after the accrual of the cause of action. Cal. Gov. Code § 911.2(a).

Because Defendants argue that the required Government Claims form "is deficient [only] as to Milton and Clark," and the Court dismisses all of Milton's and Clark's claims without leave to amend, the Court need not address whether Milton and Clark have complied with the California Government Claims Act.  *See* ECF No. 45 at 14.

## CONCLUSION

In sum, the Court grants Defendants' motion to dismiss.  All claims brought by Robert Clark and William Milton are dismissed without leave to amend.   The sole remaining Plaintiff is William Pardue on behalf of the estate of Raemon Pardue.

The following claims are dismissed with prejudice: violation of the Ralph Act; state law battery; state law negligent supervision; and state law negligence as to Milton and Clark.

Pardue's surviving claims are as follows: violation of the Eighth Amendment by infliction of disease, 42 U.S.C. § 1983; racial discrimination of federally-sponsored terrorism, 42 U.S.C. § 2000(d); and state law negligence (to the extent that Pardue's negligence claim is based upon a failure to employ safety protection, social distancing protocols, and to minimize the spread of infectious diseases).

**IT IS SO ORDERED.**

Dated:  February 18, 2025



_____
JON S. TIGAR
United States District Judge

7